[Crim. No. 16475. Second Dist., Div. One. Nov. 10, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
BYRON ARNETT LUCAS, Defendant and Appellant.

**638**

## Counsel

Herbert M. Porter for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marilyn K. Mayer, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—Defendant was charged with kidnaping for the purpose of robbery (§ 209, Pen. Code) and robbery (§ 211, Pen. Code) and with being armed with a deadly weapon, a .38 caliber revolver, at the time of the commission of the offenses. The cause on count II (robbery) was submitted on the transcript of the testimony taken at the preliminary hearing. No additional evidence was offered and the trial court found defendant guilty of robbery, first degree, but no disposition was made of the allegation that defendant was armed. Upon motion of the People count I was dismissed in the interests of justice. Defendant appeals from the judgment and order denying motion for new trial. The purported appeal from the order is dismissed.

Around 11:15 p.m. on July 26, 1968, while William Brinkmeyer, an attendant at a Texaco station, was waiting on customers, he noticed defendant, who had driven up in a 1968 yellow Chevrolet Impala, standing around. While in the lube bay room defendant approached and asked Brinkmeyer for a fan belt; a car drove up and Brinkmeyer left to wait on the customer; when he returned he looked up the price of the fan belt; as he started to ring up the amount defendant stuck a .38 caliber gun with a six-inch barrel, either a Colt or Smith and Wesson revolver, in his ribs; Brinkmeyer gave him the $114.55 in the cash register. Then holding a gun to his back defendant pushed Brinkmeyer out of the door and into the back storeroom where he forced him to get down on the floor, and handcuffed his right arm to a desk. Defendant attempted to hit him on the head but Brinkmeyer ducked.

Ronald Clark was at the station around 11:15 p.m. and saw defendant come in and ask for a fan belt; defendant had driven his car around to the back but the girl with him had not yet gotten out of the car; the station was well lighted and he was about 45 feet away from defendant; he suspected what would happen and walked across the street behind a Chevron Station to watch the activity in the Texaco Station. He observed defendant and a girl by the cash register, Brinkmeyer being shoved out of the office with defendant and the girl behind him, all of them go into the back room and 15 or 20 seconds later defendant and the girl come out, get into a yellow 1968 Chevrolet Impala and leave. Clark gave chase for a couple of miles and observed the license number (WVH 374) of defendant's vehicle.

Later Brinkmeyer saw defendant at the police station in a lineup with five other people; he positively identified him as the man who robbed him; he also identified defendant in the courtroom. At the trial Clark positively identified defendant as the man he saw in the Texaco station.

Around 3 a.m. Officer Comfort received a radio call concerning the robbery and met other officers at 48th and Vermont; he was told that the suspect was driving on 48th Street in a 1967 Chevrolet Impala, license number WUH 374, registered to J. B. Lucas, 924 West 48th Street. At this time Officer Comfort saw the yellow 1967 Chevrolet Impala driving east on Vermont and make a left turn on 48th Street; the intersection was well lighted, he was 40 to 50 yards from the car and saw the face of the driver; he identified defendant as the driver of the vehicle. The officer tried to follow but lost him, then drove to 924 48th Street. He went to the rear of the apartment and in the car port saw the Chevrolet; he felt the hood and the engine was warm. After checking the mail box for the name of the registered owner, Officer Comfort knocked on the door of apartment 1; defendant's father, J. B. Lucas, answered. The officer testified, "We said that we were police officers and could we come in, and he [J. B. Lucas] said yes, we could." The officers informed Lucas what had taken place and had a discussion about the vehicle and the robbery; defendant's father pointed out defendant's bedroom. They went in and saw defendant reclining on a bed; they asked him if he had been out that night, and replied no, he had been in his room since 6 p.m. They placed defendant under arrest and advised him of his constitutional rights. Defendant gave the officers permission to search his room but they found nothing that could have been used in connection with the robbery.

The public defender represented defendant at the trial; only the cause on count II was submitted on the transcript of the testimony taken at the preliminary hearing and no further evidence was offered. After defendant's conviction, count I (kidnaping for purpose of robbery) was dismissed and it became apparent that he would be committed to the Youth Authority, defendant substituted private counsel, Mr. Porter, also his counsel on this appeal, and moved for a new trial. In support of his motion defendant filed affidavits of his father and mother wherein they denied that his father admitted the officers to the apartment. Porter contended that the public defender did not give defendant competent representation and reduced the trial to a farce and sham in that he failed to present a defense under section 844, Penal Code. He argued there, as he does here, that defendant's mother and father would have testified that the officers forced their way into the apartment. The trial judge denied the motion on the ground that the public defender had given defendant competent representation[1] but reminded Porter that even were he to grant a new trial he knew of no case that would

---

.[1]"THE COURT: . . . When it comes to the decision, I think it is an awesome choice that you are making in this matter, Mr. Porter. I don't envy the position that you have, and it worries me considerably that whether or not I should be concerned with the consequences that could happen in the event I grant your motion. It seems to me, that you have certainly cited no evidence to the contrary or no case to the contrary,

prevent a person illegally arrested from being prosecuted (inasmuch as nothing was found in the apartment, there could be no question of an illegal search and seizure) thus, the district attorney no doubt would try defend-

that if I grant this motion that Byron Arnett Lucas could well go to prison for the rest of his life without possibility of parole.

"You say that this was not tried. It was tried by the most experienced public defender that we have in this branch and probably the most experienced public defender we have in the County of Los Angeles, a man that I know is particularly given all of the rough cases to defend, the capital cases, the cases such as this one where the person has the rest of his life at stake or life itself. So I can't in this case do anything except say that you have got the laboring—or to say that Mr. Spencer is anything but the most competent attorney that I know.

"Also, he didn't submit this matter on the basis of a slow plea. He submitted it very carefully, and very cleverly on the basis that the judge would read this case and determine the guilt or innocence as to count II only. And count II was by far the lesser of the two counts. There must have been an understanding that no evidence would be introduced so far as the armed allegation. None was. So he got two very important concessions. One of them that he tied the judge's hands so that the judge could not find the defendant guilty of kidnaping; and secondly, that he, in some way, made sure, or perhaps it is a coincidence, but he felt confident that there would be no evidence introduced or—no, more than that because it was submitted on the transcript. There was no evidence then, that would necessarily tie the defendant in as being armed with a particular weapon. The armed allegation was proved. The kidnaping wasn't proved.

"If on the basis of the technicality that you say I would grant him a new trial, instead of six months in the California Youth Authority he has got to face, upon conviction—and to me, after you made the motion this morning, or indicated, I got the copy of the transcript and read it again. The evidence is overwhelming that he is guilty, overwhelming, aside from his arrest. Then he goes to prison for life and all you have done is lose a lawsuit, lose a motion. He has lost far more than that. The parents have lost everything. They can look forward to seeing him again.

"If I grant your motion he may well never be out of prison during their lifetime. I think that the compromise made by means of the submission was a clever compromise on the part of the attorney. I think that it was good trial tactics. I think he was looking out for the best interests of his client.

"I am further not convinced of the merits of your contention. I do not think that a warrant is necessary. The robbery took place, or the robbery and kidnaping took place at 11:15 in San Fernando Valley in which somebody close to the description of the defendant, driving an automobile owned by the defendant's father, left the vicinity of the San Fernando Valley. Radio cars picked up this same car in pursuit, and there is no question about the car, the identity of the license plates, picked it up at 3 o'clock and from 3 until 3:15 or 3:30 there was a concerted effort to track down the defendant and capture him.

"So the hiatus here is between 11:15 or 11:30 when the defendant was, or whoever it was, was disposing of the woman passenger in the car and then getting the car parked when it was eventually found. .

"No, there is too much identity here. I would feel that I would be doing the defendant the greatest disserve in the world to subject him to a full-fledged trial in this matter with the probability of him being convicted of kidnaping, and he would be on the basis of these facts. There would be no hesitancy in my mind if the matter were submitted to me today with the complete transcript that I could find him guilty beyond any question of doubt in my mind as to 209, on the basis of this transcript."

ant on the kidnaping charge which, under the evidence before him, in all probability would result in his conviction and a prison term for life.[2]

Appellant's sole argument is that the public defender failed to exercise his judgment relative to the offer of the defense which appellant contends consisted of a noncompliance with the provisions of section 844, Penal Code, thereby withdrawing a crucial defense reducing the trial to a farce and sham. In the light of the record we are impressed neither with his claim nor his argument that the public defender never discussed the defense with the witnesses (defendant's father and mother), was too "busy and blasé" to interview and evaluate the two witnesses and did not fully consider the defense, and that the defense "would have eliminated a major piece of harmful testimony," to wit, what the officers saw and heard in, and defendant's presence at, the apartment.

First, there is an absence of any showing that prior to the submission of the cause on count II the public defender did not carefully investigate and consider all defenses of fact and of law that might have been available to defendant and fully discuss them with defendant and his father. To the contrary, the record demonstrates that the public defender discussed with defendant's father his proposed testimony, and J. B. Lucas so conceded in his affidavit which, after relating facts of the officers' entry to his apartment, declared, "I told my son's lawyer about this . . ."; it also shows that he not only considered these facts in relation to the provisions of section 844, Penal Code, but discussed the matter with defendant and they concluded that no testimony be offered on behalf of defendant. When the trial judge, after reading the transcript, asked if there would be any evidence on behalf of defendant, Mr. Spencer, the public defender, stated, "There will be no evidence prompted by the defendant, Your Honor. I would like the record to show that I have advised the defendant fully that he had a right to be his own witness and also to call any other witnesses he has, and he understands that;" the court asked defendant, "Do you understand that, sir?" and defendant answered, "Yes, I do."

Second, it is readily apparent that this is not a case of counsel's failure to investigate, consider and exercise his judgment concerning defenses of fact or law that might be available to his client (*In re Branch,* 70 Cal.2d 200, 210 [74 Cal.Rptr. 238, 449 P.2d 174]; *People* v. *McDowell,* 69 Cal.2d 737, 746 [73 Cal.Rptr. 1, 447 P.2d 97]; *In re Smiley,* 66 Cal.2d 606, 626 [58 Cal.Rptr. 579, 427 P.2d 179]; *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]), but one in which he discussed the only available defense and their testimony with defendant and his father and

---

[2]The trial was had long before *People* v. *Daniels,* 71 C.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], filed October 2, 1969.

determined after a consideration of Officer Comfort's testimony and that related to him by defendant and his witnesses, not to offer such defense. Weighing all of the facts, the public defender may well have believed the proposed testimony of the witnesses on that issue to be false; an attorney owes no duty to offer on behalf of his client testimony which is untrue. (*In re Branch,* 70 Cal.2d 200, 210 [74 Cal.Rptr. 238, 449 P.2d 174].) Or he may have determined that legally it made little difference how entry to the premises was made inasmuch as nothing relative to guilt was done or said on the premises and nothing was observed on or taken from them. Moreover, testimony concerning the officers' arrival at the apartment, entry and arrest of defendant seems almost irrelevant on the issue of whether he committed the robbery. The overwhelming evidence of defendant's guilt relates to matters occurring long before the officers arrived at the premises. This is not a case of circumstantial evidence. Over three hours before defendant's arrest two persons (Brinkmeyer and Clark) witnessed defendant rob the Texaco station and positively identified him as the robber; one of these witnesses watched defendant enter and take flight in a 1967 yellow Chevrolet Impala, license number WUH 374,[3] and pursued him for some distance; a check showed the registered owner of the vehicle to be defendant's father who resided at 924 West 48th Street; and several hours later Officer Comfort saw defendant driving the same vehicle on 48th Street near his father's home and shortly thereafter the car, its engine still warm, parked in the car port at that address.

■ "To justify relief on the ground that counsel was inadequate, it must appear that the trial was reduced to a farce or sham through the attorney's lack of competence, diligence, or knowledge of law. (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) ■ If a crucial defense is withdrawn from the case through the failure of counsel to investigate carefully all defenses of fact and law, the defendant has not received adequate representation. (*People* v. *Mattson,* 51 Cal.2d 777, 790-791 [336 P.2d 937].)" (*In re Beaty,* 64 Cal.2d 760, 764 [51 Cal.Rptr. 521, 414 P.2d 817].) ■ "Defendant has the burden, moreover, of establishing his allegation of inadequate representation 'not as a matter of speculation but as a demonstrable reality.' (*Adams* v. *United States* (1942) 317 U.S. 269, 281 [63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435]; accord, *People* v. *Robillard* (1960) *supra,* 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].)" (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].)

---

[3]There is a slight discrepancy in the year and license number of the yellow Chevrolet Impala. Brinkmeyer and Clark testified the Chevrolet was a 1968 model; Officer Comfort testified it was a 1967. Clark testified the license number to be WVH 374; Officer Comfort gave the number as WUH 374.

■ Here appellant has failed to sustain his burden; the record simply does not admit the application of the rule announced in *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]. A fair reading of the record reflects the public defender's full cognizance of the facts appellant claims constituted a defense, his discussion of the same with defendant and his witnesses and his careful deliberation and decision to submit the cause on the lesser offense (count II) with the apparent understanding with the district attorney that in doing so the more serious charge would be dismissed, rather than subject defendant to a full blown trial and the probability that he would be convicted not only of robbery but of kidnaping for the purpose of robbery carrying with it a life sentence without possibility of parole. As a result of this strategy the public defender obtained several important concessions for his client—defendant was convicted only of robbery, no disposition was made of the allegation that he was armed with a deadly weapon, and count I, the more serious charge (kidnaping for purposes of robbery) was dismissed. ■ All questions of strategy and trial tactics are within the scope of counsel's authority as he is "the manager of the lawsuit." (*Wilson* v. *Gray,* 345 F.2d 282, 290.) From what he then knew of the circumstances, including what his own client had told him (*People* v. *Silva,* 266 Cal.App.2d 165, 174 [72 Cal. Rptr. 38]; *People* v. *Garrison,* 246 Cal.App.2d 343, 351 [54 Cal.Rptr. 731]), the public defender was in a position to exercise his professional judgment, did so and decided that the People's case as set up in the transcript would appear to the trial judge much less damaging than if it were established anew at a trial in which all of the incriminating details would unfold. Undoubtedly this was the wisest course and his strategy was rewarding. Ordinarily the tactical decisions of trial counsel will not be reviewed with the hindsight of an appellate court, and except in rare cases it should not attempt to second guess him. (*People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383].)

The foregoing also disposes of appellant's claim that the court erred in denying his motion for a new trial. We find no abuse of the trial court's discretion. (*People* v. *Roubus,* 65 Cal.2d 218, 220-221 [53 Cal.Rptr. 281, 417 P.2d 865]; *People* v. *Starkey,* 234 Cal.App.2d 822, 831 [44 Cal.Rptr. 738].)

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.