[Crim. No. 10221. Second Dist., Div. Four. June 8, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ANDREW STARKEY, Defendant and Appellant.

Patrick Kerrigan, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., and Ronald W. Tochterman, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—In a jury trial, defendant was convicted of grand theft auto (Pen. Code, § 487, subd. 3) for the theft of a vehicle belonging to the National Truck Rental Company, on or about November 5, 1963. He was also convicted of burglarizing the F. C. Kingston Company on or about November 9, 1963. The burglary offense (Pen. Code, § 459) was found to be of the second degree. Defendant was acquitted of an additional charge of violating Vehicle Code section 10851 for the taking or driving of the vehicle belonging to the National Truck Rental Company without the latter's consent. Defendant received consecutive state prison sentences for the terms prescribed by law. He appeals from the judgment.

The evidence, viewed as we must in the light most favorable to the People, is summarized as follows: On November 5, 1963, at 10:45 a.m., defendant rented a Chevrolet truck, license number 16236, from the National Truck Rental Company (hereinafter referred to as National), which is owned and managed by Nathan Redwine. Defendant left a 1955 Pontiac which he described as "my car" in lieu of a cash deposit.

The Pontiac was an automobile agency "loan car." Defendant agreed to return the truck within five hours. He never returned. At 5:30 p.m. Redwine went to the address given by defendant on the rental contract but found no residence at the street number indicated. National's premises remained open until 12:45 a.m. on November 6 and, during this time, either Redwine or his wife was on the premises and in such a position as to be able to see the truck had it been returned. Redwine found the truck in "Impound" on November 30.

In October 1963 defendant had rented a truck from another rental company, left a "loan car" as security, and thereafter failed to return the truck or pick up the loan car.

On Saturday, November 9, 1963, the F. C. Kingston Company, a manufacturer of brass castings was closed for the weekend. On Monday, November 11, Jim Carter, the plant superintendent, arrived at the plant to find that someone had broken into the premises. Brass castings weighing approximately 1,800 pounds and "borings" (shavings which are by-products of the casting process) weighing approximately 1,400 to 1,600 pounds were missing from the machine shop. The castings had been stored in burlap bags and boxes, and the borings in barrels. The value of the missing castings and borings was estimated at $1,300 to $1,500.

On November 6, 1963, defendant had had a conversation with Jim Carter concerning employment. The conversation took place near the machine shop of the plant. Castings and borings were in plain view.

On November 11, 1963, defendant sold Harold Singer, a scrap metal dealer, brass castings weighing 1,956 pounds and borings weighing 1,356 pounds, for $563.64. The brass was in burlap bags. Defendant was parked in the driveway of Singer's junk yard when the latter arrived at work at 8 a.m. When defendant left, Singer called the sheriff's department, which was his policy when making such a purchase. The license number of the truck defendant was driving was the same as the license number of the truck rented by defendant from National on November 5. Defendant signed a purchase slip using the name "Johnny Taylor."

On November 13, or 14, 1963, Jim Carter went to Singer's junk yard and identified the castings and borings sold by defendant to Singer as the ones missing from the Kingston plant. The truck rented by defendant from National was recovered on November 30. The police found it parked on a Los Angeles street. There were 35 or 40 burlap bags and a

number of reddish-yellow shavings in the bed of the truck. The burlap bags resembled the bags which had contained the stolen castings, and the shavings resembled those sold by defendant to Singer.

In his defense defendant admitted that he rented the truck but claimed that he returned it to the rental company premises about 8:30 p.m. on November 5. When he found no one there he left the keys under the bumper and a note on the steering wheel. He telephoned Redwine the following day, but did not pay the rental fee, because it would cost more than he made from his hauling job. He admitted that he failed to return a rental truck in October 1963, but stated that he paid the rent due. He denied any involvement in the burglary and theft at the F. C. Kingston Company and denied that he sold any brass to Harold Singer.

Defendant urges the insufficiency of the evidence as a ground for reversal. ▮▮ We believe, contrary to defendant's position, that the evidence clearly supports his conviction on each charge.

With regard to the burglary conviction, there was evidence that defendant was in the Kingston plant a few days before the burglary; the property stolen was in full view at that time; burlap bags and metal shavings resembling those missing from the Kingston plant were found in the truck rented by defendant; and on the same morning that the burglary was discovered, defendant, using an assumed name, sold the missing castings and borings to a junk dealer for a price considerably below the true value of the property.

As to the grand theft conviction, the evidence showed that defendant rented the National truck, agreeing to keep it for not more than five hours; failed to return it as agreed; and was seen driving it five days later. ▮ Further, the following presumption set forth in Vehicle Code section 10855 was applicable: "Whenever any person who has leased or rented a vehicle wilfully and intentionally fails to return the vehicle to its owner within five days after the lease or rental agreement has expired, that person shall be presumed to have embezzled the vehicle." The jury was clearly entitled to find from the evidence that the presumption of embezzlement was not rebutted by defendant and that defendant was guilty of the form of theft known as embezzlement, i. e., lawfully acquiring the property and thereafter misappropriating it.[1]

---

[1]The prosecution did not seek to prove either larceny by trick and device or taking property under false pretenses, but presented its case on

Defendant claims that the jury found he committed the crime of embezzlement on November 5, 1963. This, he argues, was erroneous, because the presumption of embezzlement created by section 10855 did not become applicable until five days after the date on which the rental agreement expired, on November 10. But defendant overlooks the fact that he was found guilty of a count which charged that he committed grand theft ''on or about the 5th day of November, 1963.''

█ The law is clear that, when it is charged that an offense was committed ''on or about'' a named date, the exact date need not be proved unless the time ''is a material ingredient in the offense'' (Pen. Code § 955), and the evidence is not insufficient merely because it shows that the offense was committed on another date. (*People* v. *Barnett,* 27 Cal.2d 649, 658 [166 P.2d 4] ; *People* v. *Cook,* 136 Cal.App.2d 442, 446-447 [288 P.2d 602].) █ Furthermore, even though the presumption of section 10855 is not applicable unless the vehicle is driven at least five days after the lease or rental agreement expires, nevertheless, in cases in which it applies, it applies from the date on which the lease expires. (See *People* v. *Carr,* 229 Cal.App.2d 74, 78 [40 Cal.Rptr. 58].)

It is contended the trial court erroneously instructed the jury that the presumption of embezzlement created under Vehicle Code section 10855 had reference only to the grand theft charge (Pen. Code, § 487), and that it was inapplicable to the charge of violation of Vehicle Code section 10851 (taking or driving of an automobile without the owner's consent), of which charge defendant was subsequently acquitted. Defendant argues that the presumption of section 10855 was also applicable to the charge of violation of section 10851 and that, had the trial court not restricted the application of the presumption to the grand theft charge, the jury probably would have found him guilty of a violation of 10851 and acquitted him of grand theft which carries a heavier penalty.

█ From the record it appears that, after the jury had been out for approximately two hours, it was brought back at its own request for further instructions. The court in pertinent part then stated as follows: ''I have brought you back ladies and gentlemen of the jury because of your request.

---

two theories only, (1) common law larceny, and (2) embezzlement. The trial court gave instructions on the elements of these two forms of theft. None were requested or given on larceny by trick or false pretenses. The court further expressly instructed the jury that neither larceny by trick nor false pretenses was being charged by the prosecution.

The bailiff has delivered to me a note, which I take it was from your foreman. The note says: 'We would like to know if embezzlement charge is Count 2 or Count 3. Does 10855 refer to Count 2 or Count 3?'

"The embezzlement charge is—may I have the complaint just to be sure I don't get mixed up with my numbers.

"The embezzlement charge is the charge of theft, rather than charge of violation of 10851, so that would be the answer to the embezzlement charge is the charge of violation of Count 2, and the answer to your question does 10855 refer to Count 2 or Count 3, the answer is it refers to Count 2, the theft charge, in other words, as I read to you the instructions with relation to 10855, it says that if a person keeps a car more than five days past the time of the expiration of the lease, it is a presumption that he embezzled the car."

And, in answer to a request for a further explanation, the court stated: "Answering the question of the last juror who asked me a question, Section 10855 of the Vehicle Code, as we have discussed, does declare there is a presumption that an automobile was embezzled if it is kept more than five days after the date of the expiration of the agreement.

"In other words, it says as a presumption it is embezzled. Now, embezzlement is a form of theft, and so whenever one is charged with embezzling a money, property or a car, you don't charge them with embezzlement in the formal complaint, you charge them with grand theft, and that is what happened in relation to Count 2."

We conclude that, while the instructions above quoted were accurate as far as they went, a further explanation would have been desirable to avoid possible confusion in the minds of the jurors. ▪ As stated in *De Mond* v. *Superior Court*, 57 Cal.2d 340, 344 [19 Cal.Rptr. 313, 368 P.2d 865], "The gist of the offense proscribed by Vehicle Code, section 10851, is the taking or driving of a vehicle without the owner's consent and with the specific intent to deprive the owner, permanently or temporarily, of title to or possession of that vehicle." It is apparent that section 10851 overlaps the provisions of Penal Code section 487, subdivision 3 (grand theft —auto), and that, under the circumstances here presented, a defendant could be found guilty of a violation of section 487, subdivision 3, by reason of the jury's application of the statutory presumption contained in section 10855 of the Vehicle Code, but also, in the alternative, could quite properly be found guilty of a violation of section 10851. Thus, while a

conviction might be had under section 10851 without the use of the section 10855 presumption where the jury finds there was an unconsented to taking or driving with an intent to deprive the owner only of temporary possession (*People* v. *Carr, supra,* 229 Cal.App.2d 74, 77), still, the other possible application of section 10851, as a permissible alternative, should have been called to the jury's attention.[2] However, defendant did not object or request further amplification of the instructions by the trial court at the time they were given.

The rule is clear that, while a defendant is not precluded on appeal from raising a contention respecting an *erroneous* instruction notwithstanding there was no objection to the instruction as given (*People* v. *Gosden,* 6 Cal.2d 14, 27 [56 P.2d 211]; Code Civ. Proc., § 647; Pen. Code, §§ 1176, 1259), "Where an instruction on a particular point or points as given by the court is correct as far as it goes, and the only valid objection, if any, to it is that it is deficient or inadequate by reason of its generality, indefiniteness, or incompleteness, if defendant desires additional, amplified, explanatory, fuller, or more complete, elaborate, comprehensive, definite, specific or explicit instructions on such point or points, he must properly request the same, otherwise error cannot be predicated upon the failure to give such additional instruction. [Citations.]" (*People* v. *Carothers,* 77 Cal.App.2d 252, 255 [175 P.2d 30]. See also *People* v. *Shepherd* 223 Cal.App.2d 166, 173 [35 Cal.Rptr. 497].) We find that the latter rule is applicable here and that defendant has waived any right to raise the point now for the first time.

Defendant further contends that the trial court erred in giving two instructions on aiders and abettors as principals when there was no evidence showing participation by any person other than defendant in the alleged crimes. While the law is clear that it is error to give an instruction which, although correctly stating the law, has no application to the facts of the case, "However, the giving of such an instruction does not justify a reversal of the judgment unless it is affirmatively shown that the error would prejudice the rights of the defendant." (*People* v. *Eggers,* 30 Cal.2d 676, 687 [185 P.2d 1].) No prejudice is shown in the instant case.

---

[2] In the instant case, the section 10851 alternative was present by reason of the inclusion of a count charging a violation of that section and our discussion is limited to a case wherein that is the situation. Whether or not an instruction on section 10851 is required, or even proper, in a case where only a charge of grand theft auto has been made involves other problems which we do not here consider.

It is claimed that the court erroneously refused to give six instructions requested by defendant "on defendant's theory of the case."[3] The six instructions requested related to section 499b of the Penal Code (the "joy-ride" statute), making it a misdemeanor for a person to take an automobile for the purpose of temporarily using or operating it without the consent of the owner. We interpret defendant's contention to be that the court was required to instruct on section 499b as a lesser, but necessarily included offense in the crime charged. But in *People* v. *Thomas,* 58 Cal.2d 121, 127-129 [23 Cal.Rptr. 161, 373 P.2d 97], the court held that a complaint charging a violation of section 10851, where the defendant took an automobile without the owner's consent with the intent to deprive the owner of his possession, did not necessarily include a violation of Penal Code section 499b. The court reasoned that the owner of the vehicle could be deprived of possession in many ways which would not necessarily require, as under section 499b, that the defendant use or operate the vehicle. (See also *People* v. *Tellez,* 32 Cal.App.2d 217, 219-220 [89 P.2d 451].)

Defendant asserts the trial court permitted evidence of his "extra-judicial admission made to investigating officers" without a showing that, prior to making the "admission," he had been advised of his rights to counsel and to remain silent, in violation of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

Defendant testified on cross-examination that, after bringing the rented truck back on November 5, he failed to pay the rent due because he was "broke." He further testified that between November 4 and November 21 when he was arrested, he made between $60 and $70 doing construction work and that his cousin had given him $10 or $15. For purposes of impeachment the deputy district attorney asked defendant whether he made a statement after his arrest to the police, which was written down and signed by him, in which he said, "I made about $120.00, I did some construction work out on Sunset Strip, I went to the race track and made $40.00 or $50.00." Upon defendant's denial a police officer was called in rebuttal and testified that defendant had in fact made this statement.

---

[3]Defendant failed to present a complete record on appeal in that the instructions given and refused were not included. However, we have augmented the record on our own motion to include the entire superior court file which contains the instructions given and refused.

While the above statement may be regarded as incriminatory and inadmissible evidence in the light of the rule of *People* v. *Dorado, supra,* 62 Cal.2d 338, we conclude that the error in admitting the statement was not prejudicial to defendant and, thus, does not require a reversal of the judgment. The evidence establishing defendant's guilt was overwhelming. It is not probable that a result more favorable to the defendant would have been reached if the statement had been excluded. (*People* v. *Watson,* 46 Cal.2d 818, 835-837 [299 P.2d 243]; Cal. Const., art. VI, § 4½.)

Finally, it is alleged the trial court erred in denying defendant's motion for a new trial. Such a motion is addressed to the sound legal discretion of the trial court and will not be disturbed on appeal absent a clear showing of abuse of that discretion. (*People* v. *Bittick,* 177 Cal.App.2d 479, 483 [2 Cal.Rptr. 378].) Defendant has shown no such abuse.

The judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.