[No. B039902. Second Dist., Div. Four. May 15, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT TODD McDADE, Defendant and Appellant.

**COUNSEL**

Barbara Springer Perry, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Thomas L. Willhite, Jr., and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GOERTZEN, J.**—Vincent Todd McDade appeals from the judgment entered following a jury trial in which he was convicted of two counts of first

degree robbery (counts I and II) (Pen. Code, § 211), and a finding that he suffered a prior serious felony conviction within the meaning of Penal Code section 667, subdivision (a), and three prior felony convictions within the meaning of Penal Code section 667.5, subdivision (b).[1] He contends the trial court committed prejudicial error when it denied defense counsel's motions to be relieved, that appellant was denied the effective assistance of counsel, that the evidence was insufficient to sustain his conviction on one robbery count, that he was deprived of adequate notice of the charges against him, that the jury was not properly instructed, that the court erred in denying appellant's motion for a new trial and that the evidence was insufficient to establish the residential nature of appellant's prior burglary conviction.

On October 18, 1988, following discussions in court about a possible plea, defense counsel asked that another attorney be appointed to represent appellant because the relationship of attorney and client had broken down. Counsel indicated that after communicating an offer made by the prosecution as required by law, appellant seemed to think counsel had betrayed him. When the court inquired of appellant whether he could get along with counsel and whether he would be willing to work with her, appellant responded that it had been working so far and that he would be willing to work with her. Counsel also indicated to the court she was willing to work with appellant. The matter was continued to October 31, 1988, in that counsel for codefendant Evans was engaged in another matter.

On October 31, defense counsel renewed her motion to be relieved as counsel stating there had been no revival of the attorney-client relationship. Appellant stated he had not seen counsel since October 18 and that after counsel handed him the motion to be relieved, he did not think she could properly represent him.

In proceedings held at the bench between defense counsel and the court, counsel stated the basis of her conflict with appellant. Counsel again stated that following communication of the prosecution's offer, appellant got the idea counsel had betrayed him and that since then, appellant's idea is that "he should jam [her] somehow." Counsel claimed that appellant did not care whether he went to state prison or not; that the "object [was to] lay some blame on [counsel], worry [her] for the next 20 to 30 years with incompetency claims." After reexamining her relationship with appellant, counsel was not convinced of the justice of appellant's cause and feared that through her demeanor she might convey that to the jury and prejudice appellant's

---

[1]Codefendant James Evans is not a party to this appeal.

The jury was deadlocked on count III which alleged that on May 2, 1988, appellant and Evans robbed David Bogonovich and the count was thereafter dismissed.

case. The court indicated that counsel had made it clear in the past that she was concerned about malpractice claims; that the court sympathized with counsel, and that the court was cognizant that counsel had worked very hard on appellant's case. The court indicated that whatever appellant's feelings were, he had a right to a trial and the court believed that counsel was prepared for trial. The court felt that the case had dragged on, and the court was ready to go forward. The court felt that the reasons were insufficient for the court to relieve her as counsel of record. The court advised counsel that if at any time the court observed counsel's demeanor to give away anything on appellant's behalf, it would stop the proceedings and declare a mistrial. Defense counsel again stated that appellant had made her so mad that she was not "really . . . all that concerned as to whether he gets—in fact I'm not sure there would be an injustice if he doesn't. That's the part that bothers me." The court again advised counsel it would watch her behavior to see if there was anything that even looked like incompetency and it would stop the trial if such appeared. Counsel stated it was her opinion that appellant was making a mistake and that she considered it a waste of time to go to trial on the case. The court advised counsel to try the case as best she could and counsel said she would.

## COUNTS I AND II

Dale Clinton Weatherford testified that between April 26 and April 30, 1988, he was living at the Los Angeles County Central Jail assigned to A-row 2600 module, cell 4. Between 2 and 3 p.m. on April 26, while the gates to the entire row were opened for clothing exchange, codefendant Evans approached Weatherford from behind and choked him. While they were struggling, appellant came in and grabbed Weatherford's personal items, including cigarettes, candy, nuts, tobacco and a chess set. Weatherford woke up on the floor, believing he had had a seizure but then remembered being choked. He did not report the incident because there had been no witnesses and he did not want to be labeled as a "snitch." He was, however, sure of the identities of the men involved.

On April 30, while Weatherford was in his cell between 3:30 p.m. and 4 p.m. and the gates were all open for the dinner meal, Evans again approached and choked Weatherford from behind. Before losing consciousness, Weatherford saw appellant come in and rip a money bag containing $43.60 off Weatherford's neck. Weatherford had a string burn all around his neck. Weatherford reported to a deputy that he had had a seizure. When Deputy Anderson observed the mark on Weatherford's neck, Weatherford told Anderson that he had been choked and robbed twice in that same week. Weatherford stated he did not want to identify the robbers.

On May 2, a deputy sheriff took Weatherford from his cell to the barber shop on the second floor where he identified appellant and Evans from a lineup. At the same time, two other inmates were present making identifications from the lineup. One was Bogonovich and the other was Paul Van Veen. The procedure followed was that while one party was choosing from the lineup, the other two were in the barber shop with their backs to the window. Weatherford did not see who the other two inmates had identified. Weatherford later identified Evans and appellant from a photographic lineup.

Deputy Sheriff Todd Anderson testified that between April 30 and May 2, 1988, he was assigned to the men's Central Jail. On April 30, he responded to module 2600 and took Weatherford to the clinic. Anderson noticed that Weatherford had some scratches on his face, neck and eye. His lip was bleeding. On that date, Anderson removed Weatherford from his module and inmate Bogonovich was moved into the slot.

Anderson testified regarding computer printouts of housing locations for Evans and appellant since they had been in jail. The printouts indicated that neither Evans nor appellant was assigned to module 2600 prior to April 27. Anderson testified that clothing exchanges would have been held in module 2600 on Tuesdays and Thursdays anywhere from 1 to 3 o'clock in the afternoon.[2]

Anderson testified that he conducted an investigation following his interview with Weatherford. No one claimed to have seen anything. He spoke to the other inmates inside Weatherford's cell and the cell next to Weatherford's, as well as to various people up and down the row.

During argument to the jury, the prosecutor stated the People's position was that the evidence showed that the first robbery occurred on April 28 and not April 26; that the testimony of other witnesses indicated that the clothing exchange process occurred on Tuesday, the 26th and also on Thursday, the 28th, and that these facts, together with the jail records, indicated that Weatherford was mistaken as to the date of his first robbery.

In defense, Rickey Madden testified that he was living at the county jail and had been there since April 26, 1988. He met appellant around April 28 and they were cellmates for a little over a week. On May 2, Madden and appellant were in two lineups. The first lineup occurred in cell A-2. Madden stated that during this first lineup, he heard the person who was viewing the inmates say that appellant was not the one they were looking for.

Paul Van Veen testified that he had been in the county jail since April 4, 1988; that he met David Bogonovich because they were housed in the same

---

[2]The court took judicial notice that April 26, 1988, fell on a Tuesday.

module; that he recalls carrying Bogonovich after he was attacked. Van Veen testified he was not sure who attacked Bogonovich and that he had previously told the prosecutor that he did not want to testify in the case. Van Veen stated he was certain he had not identified appellant or Evans at a lineup on May 2.

In rebuttal, Deputy Gloria Gressman testified that she interviewed Van Veen, and he told her that he had seen Evans enter the cell and choke Bogonovich and then he saw appellant frisk Bogonovich and steal some cigarettes. Van Veen told Gressman he had seen the exact same thing happen to Weatherford a few days earlier. Van Veen told Gressman that he would testify as long as he was not going to do "state time." Gressman said that Van Veen was subsequently sentenced to state prison anyway and thus had become a reluctant witness.

Deputy David Schoonover testified that on May 2, Van Veen told him he had witnessed the robbery of Bogonovich and that he had also witnessed a robbery the day before.

Deputy Anderson testified that he observed Van Veen identify appellant and Evans as the people who committed the robbery on May 2 as well as a prior robbery.

## DISCUSSION

### MOTION TO BE RELIEVED AS COUNSEL

Appellant's contention that the trial court committed reversible error when it twice denied defense counsel's motion to withdraw is without merit. The determination of whether to grant or deny a motion by an attorney to withdraw is within the sound discretion of the trial court and will be reversed on appeal only upon a clear showing of abuse of that discretion. (*People* v. *McKenzie* (1983) 34 Cal.3d 616, 629 [194 Cal.Rptr. 462, 668 P.2d 769]; *People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008].) Following counsel's motion on October 18, counsel and appellant both agreed that they were willing to work with each other. Thereafter, on October 31, the day of trial, defense counsel stated her concern about whether she could vigorously represent appellant, but she nonetheless represented to the court that she would try the case as best she could. Additionally, the court stated it would be watchful of counsel's performance and stop the trial if counsel's behavior in any way appeared to prejudice appellant. The record nowhere reflects a "breakdown in the attorney-client relationship of such magnitude as to jeopardize the [appellant's]

right to effective assistance of counsel." (*People* v. *Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *Brown* (1988) 203 Cal.App.3d 1335, 1341 [250 Cal.Rptr. 762].)

## EFFECTIVE ASSISTANCE OF COUNSEL

■ Appellant's contention that he was deprived of his right to effective assistance of counsel because counsel failed to investigate his defense and to prepare his case in connection with proof of the prior convictions is equally without merit.

■ "A finding that defendant was denied his right to effective assistance of counsel requires proof not only that counsel's performance was deficient, but also that defendant was prejudiced." (*In re Fields* (1990) 51 Cal.3d 1063, 1068 [275 Cal.Rptr. 384, 800 P.2d 862].) "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland* v. *Washington* (1984) 466 U.S. 668, 693-694 [80 L.Ed.2d 674, 697-698, 104 S.Ct. 2052].) "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Id.*, at p. 697 [80 L.Ed.2d at p. 699].) ■ Appellant has failed to prove prejudice under *Strickland*. Appellant's showing of defense counsel's alleged inadequate investigative and preparation efforts was speculative. This was also true of appellant's description of what evidence might have been discovered and produced. As Deputy Anderson testified, even though he interviewed other inmates inside Weatherford's cell and next to his cell, Anderson was unable to find any witnesses who would say they saw anything.

## SUFFICIENCY OF EVIDENCE ON COUNT I

■ Appellant contends that the evidence was insufficient to sustain a conviction on count I in that the information alleged the crime occurred "[o]n or about April 26, 1988" and the evidence established that it was impossible for appellant to have committed the offense on that date because appellant was in another part of the jail. Appellant's contention is without merit. "The law is clear that, when it is charged that an offense was committed 'on or about' a named date, the exact date need not be proved

unless the time 'is a material ingredient in the offense' (Pen. Code, § 955), and the evidence is not insufficient merely because it shows that the offense was committed on another date. [Citations.]" (*People* v. *Starkey* (1965) 234 Cal.App.2d 822, 827 [44 Cal.Rptr. 738].)

Substantial evidence supports appellant's conviction for the robbery of Weatherford occurring on April 28, 1988. (See *People* v. *Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The prosecutor's argument to the jury that the offense occurred on April 28 was proper and appellant was not denied due process of law. (See *People* v. *Jones* (1990) 51 Cal.3d 294, 317 [270 Cal.Rptr. 611, 792 P.2d 643].)

## JURY INSTRUCTIONS

■ Similarly the court's instruction to the jury that it was sufficient if the proof showed that the crime was committed on or about April 26, 1988, was proper.[3]

The evidence did not tend to establish that there was more than one act upon which a conviction on count I could be based and a unanimity instruction was not required. (*People* v. *Muniz* (1989) 213 Cal.App.3d 1508, 1518 [262 Cal.Rptr. 743].)

## A JAIL CELL IS AN INHABITED DWELLING FOR PURPOSES OF FIRST DEGREE ROBBERY

■ Penal Code section 212.5 provides in relevant part that "every robbery which is perpetrated in an inhabited dwelling house, . . . or the inhabited portion of any other building, is robbery of the first degree." "Robbery is a compound crime against property and persons including elements of both theft and assault. [Citations.] Although intending to deter both theft and personal harm, robbery legislation emphasizes personal protection. Implementing its intent to protect robbery victims, the Legislature has developed a statutory scheme increasing sentences for increased victim vulnerability. [¶] Victims inside buildings are more vulnerable to felonious conduct than victims out of doors. [Citation.]" (*People* v. *Fleetwood* (1985)

---

[3]The jury was instructed with a modification of CALJIC Nos. 4.50 and 4.71 which read: "In Count I of the Information it is alleged that the defendants committed the crime of robbery upon Dale Weatherford on or about April 26, 1988. If the jury finds that the crime was committed, it is not necessary that the proof show that it was committed on that precise date; it is sufficient if the proof shows that the crime was committed on or about that date. [¶] Evidence has been received for the purpose of showing that the defendants were not present at the time and place of the commission of the alleged offense in Count I. [¶] If, after a consideration of all the evidence, you have a reasonable doubt as to whether a defendant was present at the time the crime was committed in Count I, he is entitled to a not guilty verdict."

171 Cal.App.3d 982, 986-987 [217 Cal.Rptr. 612], fns. omitted.) As observed by respondent, the record does indicate "how vulnerable some inmates are to predators like appellant and his cohort," and we decline to hold that a jail cell in which seven or eight inmates live is not an inhabited portion of a building within the meaning of Penal Code section 212.5.[4]

### PROOF OF PRIOR CONVICTION

The court found that appellant's prior burglary conviction in case number A378812 was a residential burglary and a serious felony within the meaning of Penal Code section 667, subdivision (a). The court based its finding upon the evidence before it. This included the probation report which showed that appellant was found hiding in the closet of the home of his victim on May 6, 1982, between 10:30 and 11 a.m., the complaint which alleged a residential burglary occurring in 1982, and the fact that appellant entered a certified plea to the complaint. The court took judicial notice that in 1982, burglary of a residence during the daytime was burglary of the second degree.

■ Appellant contends that probation reports form no part of the record of conviction and that therefore the trial court erred when it relied on the probation report to sustain the finding made pursuant to Penal Code section 667, subdivision (a). Appellant's contention is unavailing. In determining the truth of a prior conviction allegation, the trier of fact may look to the entire record of the conviction. (*People* v. *Guerrero* (1988) 44 Cal.3d 343, 355-356 [243 Cal.Rptr. 688, 748 P.2d 1150].) Apart from whether the court properly considered the probation report in establishing the residential nature of appellant's prior conviction, the complaint charging appellant with a residential burglary together with appellant's certified guilty plea to the complaint constituted sufficient admissible evidence to establish the residential nature of the prior serious felony conviction. (See *People* v. *Gomez* (1990) 219 Cal.App.3d 157, 162 [268 Cal.Rptr. 50].)

### MOTION FOR NEW TRIAL

Having rejected appellant's argument that he suffered ineffective assistance of counsel and that his convictions are not supported by substantial evidence, it necessarily follows that the court did not abuse its discretion in denying appellant's motion for a new trial.

---

[4]The jury was instructed that "A jail cell used as sleeping quarters is an inhabited portion of a building as used in these instructions."

## DISPOSITION

The judgment is affirmed.

George, Acting P. J., and Epstein, J., concurred.

A petition for a rehearing was denied June 4, 1991, and appellant's petition for review by the Supreme Court was denied August 29, 1991.