Filed 6/13/14  P. v. Villanueva CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IKER GERARALDO VILLANUEVA,<br><br>    Defendant and Appellant. | B246966<br><br>(Los Angeles County<br>Super. Ct. No. LA065764) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Jesic, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

Iker Geraraldo Villanueva appeals from the judgment entered following his convictions by jury on two counts of kidnapping during carjacking (Pen. Code, 209.5, subd. (a); counts 1 & 9), two counts of carjacking (Pen. Code, § 215, subd. (a); counts 2 & 13), two counts of first degree robbery (Pen. Code, §§ 211, 212.5, subd. (a); counts 3 & 12), count 4 - carjacking (Pen. Code, § 215, subd. (a)), three counts of second degree robbery (Pen. Code, § 211; counts 5– 7), count 8 – kidnapping to rob (Pen. Code, § 209, subd. (b)(1)), count 10 – false imprisonment by violence (Pen. Code, §§ 236, 237), and count 11 – criminal threats (Pen. Code, § 422) with findings as to counts 4, 8, 9, 12, and 13 appellant personally used a firearm (Pen. Code, § 12022.53, subd. (b)), as to counts 4, 6, and 7 he personally discharged a firearm (Pen. Code, § 12022.53, subd. (c)), and as to counts 5 through 13 he was armed with a firearm (Pen. Code, § 12022, subd. (a)(1)). The court sentenced appellant to prison for life with the possibility of parole plus 10 years on count 1, and for 23 years on count 4, with concurrent or stayed sentences on the remaining counts. We affirm in part, reverse in part, and remand for resentencing with directions.

## FACTUAL SUMMARY

1. *The Offenses Against Barbarian, Brito, and Escareno (Counts 4 – 7).*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established on July 13, 2010, appellant and a confederate robbed Avo Barbarian (count 7) at Erwin and Ethel in Los Angeles. On July 16, 2010, appellant robbed Hector Brito and Edgar Escareno (counts 5 & 6), and carjacked Escareno (count 4) on Van Owen and Fulton.

2. *The Offenses Against Hector Castro (Counts 8 –13).*

   a. *People's Evidence.*

The evidence established in July 2010, Hector Castro was employed as an unlicensed taxi driver. A "base" would call Castro to notify him where to pick up a person, and Castro testified "we have set prices." In 2010, he used his car, a 2002 Infinity, as the taxi. It did not have the equipment of a normal cab.

2

On the evening of July 23, 2010, Castro was working as a "bandit taxi." Castro received a call from the base and went to Woodman and Nordhoff to pick up a fare. Codefendant Erick Gonzalez[1] entered the cab. At Gonzalez's request, Castro eventually took him to a nightclub near Hollywood and Highland.

Castro asked for his money. Gonzalez indicated he would call his friend because his friend was going to pay the money. Gonzalez made a call and, shortly thereafter, appellant exited the nightclub and approached. Appellant told Castro appellant was not going to pay. Castro again asked Gonzalez for payment.

Appellant told Gonzalez to pull out "the weapon" and point it at Castro. Gonzalez complied. Appellant sat in the back seat. Gonzalez gave the gun to appellant, who put the gun against Castro's ribs. Appellant later told Castro to drive and Castro complied. Appellant and Gonzalez subsequently committed the offenses alleged in counts 8 through 13.

3. *The Offenses Against Ramon Barajas (Counts 1 – 3).*

a. *People's Evidence.*

Ramon Barajas testified on August 4, 2010, he was employed as an unlicensed taxi driver. A person would call the main number and request a taxi. A base would notify Barajas by radio where to pick up the person. Barajas would tell a prospective customer the approximate amount Barajas wanted the person to pay.

On the night of August 4, 2010, Barajas went to pick up a fare on Ethel and Barham. Barajas was a "bandit taxi driver." He was driving his 2005 Sebring. When Barajas arrived at the location, appellant entered the car and sat in the passenger seat. Appellant asked Barajas to take him to an In-N-Out Burger on Lankershim. After Barajas drove there and entered the parking lot, Gonzalez entered the car and sat in the backseat. Appellant told Barajas to return to Ethel and Barham.

---

[1] Erick Gonzalez is not a party to this appeal.

While Barajas was returning, appellant pulled out a gun and told Barajas to continue driving on Victory to Tujunga. While appellant was complying, Gonzalez told appellant that appellant should drive. Appellant gave the gun to Gonzalez, who told Barajas to continue driving and continued pointing the gun at him. At one point, appellant grabbed the steering wheel and told Barajas to keep driving. Barajas wanted to move his hand but Gonzalez grabbed Barajas's hair and held Barajas's head. Barajas asked appellant to release the wheel and Gonzalez put the gun against Barajas's head.

As Barajas drove near Tujunga, appellant and Gonzales robbed Barajas of his money. Appellant told Barajas to stop so appellant could drive, and Barajas complied. At some point appellant indicated if Barajas tried to do something, appellant and Gonzalez would get Barajas. Barajas, afraid, fled from the car and Gonzalez continued pointing the gun at him. Appellant and Gonzales drove away in the car.

b. *Defense Evidence.*

In defense, appellant testified as follows. Appellant was involved in the incidents involving Barbarian, Escareno, Castro, and Barajas. As to Barajas (counts 1 – 3), appellant and Gonzalez had planned to rob a taxi driver. Barajas picked appellant up and took him to an In-N-Out Burger on Lankershim. Gonzalez was there and he sat in the backseat of Barajas's car. About three minutes after leaving the restaurant, appellant told Barajas to pull over and park. After Barajas complied, appellant pulled out a plastic gun, pointed it at Barajas, and robbed him of various belongings. Barajas fled from the car. After Gonzalez sat in the passenger's seat, appellant drove Gonzalez to a friend's house and bought drugs.

## ISSUES

Appellant claims (1) his conviction on count 10 must be reversed, (2) his convictions on counts 2 and 13 must be reversed, (3) his convictions on counts 3 and 12 must be reversed, (4) the trial court erred by giving CALCRIM No. 334, (5) he was denied effective assistance of counsel by his trial counsel's failure to request a pinpoint instruction as to count 1 that consent was a defense not vitiated by fraud, (6) the Penal

4

Code section 12022.53, subdivision (b) enhancement as to count 1 must be stricken, (7) the trial court failed to exercise its informed discretion when imposing a consecutive determinate term, and appellant was denied effective assistance of counsel by his trial counsel's failure to inform the court concerning that discretion, and (8) appellant is entitled to additional conduct credits.

## DISCUSSION

1. *Appellant's Conviction for False Imprisonment (Count 10) Must Be Reversed.*

Respondent concedes appellant's false imprisonment of Castro (count 10) is a lesser included offense of kidnapping to rob Castro (count 8) and kidnapping him during a carjacking (count 9); therefore, appellant's conviction on count 10 must be reversed. We accept the concession. (*People v. Shadden* (2001) 93 Cal.App.4th 164, 171.) We will reverse appellant's conviction on count 10 and dismiss that count. (Cf. *People v. Ortiz* (2002) 101 Cal.App.4th 410, 415, 417; *People v. Contreras* (1997) 55 Cal.App.4th 760, 762, 765.)

2. *Appellant's Convictions for Carjacking (Counts 2 & 13) Must Be Reversed.*

Respondent concedes appellant's carjacking offenses against Barajas and Castro (counts 2 & 13, respectively) are lesser included offenses of his offenses of kidnapping during carjacking (counts 1 & 9, respectively); therefore, appellant's convictions on counts 2 and 13 must be reversed. We accept the concession. (*People v. Duran* (2001) 88 Cal.App.4th 1371, 1374.) We will reverse appellant's convictions on counts 2 and 13 and dismiss those counts.

3. *There Was Sufficient Evidence the Robberies at Issue in Counts 3 and 12 Were of the First Degree.*

Appellant claims there is insufficient evidence the robberies at issue in counts 3 and 12 were of the first degree for purposes of Penal Code section 212.5, subdivision (a). In particular, he argues there was insufficient evidence he was an "operator of any . . . taxicab" for purposes of that subdivision because he was "operat[ing] a taxicab without a franchise granted by the City of Los Angeles" as required by Los Angeles Municipal

5

Code section 71.02, subdivision (b), and because he was operating a taxicab without the "taxicab vehicle permit" required by section 71.02, subdivision (b). We reject appellant's claim.

Penal Code section 212.5, subdivision (a) states first degree robbery includes the "robbery of *any* person who is performing his or her duties as an *operator* of *any* . . . taxicab." (Italics added.) There is no ambiguity in this language, we presume the Legislature meant what it said, and the plain meaning of the subdivision governs. (See *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 905.) An "operator" is one who "operates," and "operate" means "to cause to function [usually] by direct personal effort."[2] The word "taxicab" means "a chauffeur-driven automobile available on call to carry a passenger between any two points (as within a city) for a fare determined by a taximeter, zone system, or flat rate."[3] In light of the People's evidence in this case, there was substantial evidence as to each of counts 3 and 12 appellant committed a "robbery of any person who is performing his . . . duties as an operator of any . . . taxicab" within the meaning of section 212.5, subdivision (a).

Penal Code section 212.5, subdivision (a) does not refer to Los Angeles Municipal Code section 71.02, subdivision (b), or vice versa. Appellant cites no case holding Penal Code section 212.5, subdivision (a) must be construed in light of Los Angeles Municipal Code section 71.02, subdivision (b). Appellant's arguments conflate operation with regulation of operation.

Moreover, in *People v. McDade* (1991) 230 Cal.App.3d 118, the court, discussing Penal Code section 212.5, subdivision (a), stated, " '[R]obbery legislation emphasizes personal protection. Implementing its intent to protect robbery victims, the Legislature has developed a statutory scheme increasing sentences for increased victim vulnerability.' " (*McDade,* at p. 127.) Taxi drivers, legitimate or "bandit," drive for a

---

[2]    Webster's Third New International Dictionary (1961) (Webster's) page 1581.

[3]    Webster's, page 2345. The word "taxi" is short for "taxicab." (*Id.*)

6

hire and are more vulnerable than members of the public generally. Conditioning application of subdivision (a) on whether appellant complied with local franchising and permit requirements would disserve the Legislature's intent to increase sentences for increased victim vulnerability.

4. *CALCRIM No. 334 Was Correct.*

Appellant claims the trial court erred by giving CALCRIM No. 334. We reject the claim. In *People v. Coffman and Marlow* (2004) 34 Cal.4th 1 (*Coffman*), two codefendants, accomplices to each other, each testified at trial and sought to blame the other for the offenses. (*Id.* at pp. 104-105.) *Coffman* reviewed a jury instruction advising caution when the jury considered an accomplice-defendant's testimony against a codefendant. (*Id.* at p. 104.)

After quoting the particularly worded instruction in that case, *Coffman* observed, "We have more recently prescribed a modification of the standard instruction, by which the testimony of an accomplice that is unfavorable to the defense is to be viewed with care and caution. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569 [*Guiuan*].)" (*Coffman*, *supra*, 34 Cal.4th at p. 105, fn. 36.) The instruction in *Guiuan* stated, " 'To the extent an accomplice gives testimony that tends to incriminate the defendant, it should be viewed with caution. This does not mean, however, that you may arbitrarily disregard that testimony. You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the evidence in the case.' " (*Guiuan*, *supra*, 18 Cal.4th at p. 569.)

The pertinent portion of CALCRIM No. 334 given in the present case was essentially the same as the *Guiuan* instruction.[4] Appellant argues CALCRIM No. 334 is erroneous because it refers to accomplice testimony that tends to incriminate the

---

[4] CALCRIM No. 334 stated, "Any testimony of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the other evidence."

7

"defendant" instead of accomplice testimony that tends to incriminate the "codefendant." Appellant maintains since he was an accomplice and a defendant, use of the word "defendant" not only told the jury to view with caution appellant's testimony to the extent it tended to incriminate Gonzales as a codefendant, but erroneously told the jury to view with caution appellant's testimony to the extent it was offered in his own defense as a "defendant."

There was no error. The instruction given to the jury in the present case is essentially the same one *Coffman* and *Guiuan* approvingly cited. Moreover, in the present case, CALCRIM No. 334 told the jury, "A person is an accomplice if he or she is subject to prosecution for the identical crime charged against the defendant." The instruction, reasonably understood, presupposes the "accomplice" and "defendant" are different persons, i.e., one cannot be one's own accomplice. Nor could appellant logically present testimony tending to incriminate him on a charge, in his own defense on that charge. There is no reasonable likelihood the jury would have construed CALCRIM No. 334 as appellant suggests.[5] (See *People v. Kelly* (1992) 1 Cal.4th 495, 525.)

Finally, even if appellant's arguments had merit, the alleged instructional error was beneficial to him insofar as it told the jury appellant's testimony should be viewed with caution to the extent it incriminated him. Appellant concedes "during [appellant's] own testimony he admitted to having committed most of the crimes," "all of [Villanueva's testimony] was incriminating," and "[appellant's] testimony was essentially a confession to the crimes charged."

---

[5] *People v. Fowler* (1987) 196 Cal.App.3d 79, 85 (*Fowler*), cited by appellant, does not compel a contrary conclusion. In *Fowler*, unlike the present case, the court instructed the jury, " 'The testimony of an accomplice which tends to incriminate the other in the offense for which they are on trial should be viewed *with distrust*.' " (*Fowler*, at p. 85, italics added.) *Coffman* characterized the *Fowler* instruction as one "to *distrust* everything an accomplice-defendant testified to." (*Coffman, supra*, 34 Cal.4th at p. 105, fn. 37, italics added.) The CALCRIM No. 334 instruction used in the present case did not refer to "distrust" and the instruction contained two additional explanatory sentences not found in the *Fowler* instruction.

Appellant excepts from the above concessions count 1, arguing that, based on appellant's testimony concerning the events involving Barajas, appellant did not kidnap him; therefore, the challenged instruction told the jury to view with distrust appellant's testimony in his own defense as to count 1. However, as to that count, our analysis in part 5 of our Discussion *post* that appellant's remaining convictions in this case render not prejudicial the alleged constitutionally-deficient representation discussed there, also render not prejudicial the instructional error alleged here. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Fowler, supra,* 196 Cal.App.3d at p. 88.)

5. *Appellant Was Not Denied Effective Assistance of Counsel*.

Appellant claims he was denied effective assistance of counsel by his trial counsel's failure to request a pinpoint instruction as to count 1 consent was a defense not vitiated by fraud.[6] The trial court instructed the jury to prove count 1, the People had to prove Barajas "did not consent to the movement." However, appellant in essence argues he was entitled to an instruction Barajas's consent was not vitiated by the fact Barajas was tricked into moving and unaware of appellant's intentions, i.e., fraud in the inducement of the consent did not vitiate it. Appellant maintains his trial counsel should have requested such an instruction because appellant testified to the effect Barajas drove voluntarily, i.e., no kidnapping occurred, and appellant carjacked and robbed Barajas only after he stopped. We reject appellant's claim.

First, the record sheds no light on why appellant's trial counsel failed to act in the manner challenged, the record does not reflect said counsel was asked for an explanation and failed to provide one, and we cannot say there simply could have been no satisfactory explanation. We reject appellant's ineffective assistance claim. (See *People v. Slaughter*

---

[6] " '[A]sportation by fraud alone does not constitute general kidnapping in California.' ([Citation]; *People v. Green* (1980) 27 Cal.3d 1, 64, 63 . . . ['defendant tricked [victim] into believing she was simply being taken on a quick trip to her sister's house and back'].)" (*People v. Majors* (2004) 33 Cal.4th 321, 327 (*Majors*).)

(2002) 27 Cal.4th 1187, 1219 (*Slaughter*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)

Second, there were satisfactory reasons appellant's trial counsel may not have requested the pinpoint instruction. First, the court instructed the jury kidnapping required "using force or . . . instilling . . . reasonable fear." The "concepts of consent and force or fear 'are clearly intertwined.' " (*Majors, supra,* 33 Cal.4th at p. 327.) During jury argument, appellant's counsel argued appellant did not kidnap Barajas because appellant did not use "force or intimidation" until Barajas stopped the car, and there was "no movement under threat or force" based on appellant's testimony. Appellant's counsel reasonably could have believed it was sufficient to argue the absence of force or threat without also arguing the intertwined concept fraud did not vitiate consent.

Further, leaving aside count 1, and appellant's convictions we will reverse because they are lesser included offenses, we note appellant committed two aggravated kidnappings (counts 8 & 9), five robberies (counts 3, 5 – 7 & 12), and carjacking (count 4), i.e., multiple offenses involving force or fear and/or lack of victim consent. He also committed criminal threats (count 11), threatening to kill or cause great bodily injury to Castro.

The above remaining offenses were evidence of a common design or plan to use force or fear and, therefore, evidence appellant used force or instilled reasonable fear in Barajas. (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 394, fn. 2, 403.) Appellant's counsel reasonably could have refrained from requesting the pinpoint instruction because he believed said offenses were so potent as evidence appellant used force or instilled reasonable fear in Barajas, with the result Barajas's movement was not consensual, that the pinpoint instruction would have had no impact on the verdict. Similarly, the remaining offenses were morally turpitudinous and impeached appellant's testimony Barajas's movement was consensual. Appellant's counsel reasonably could have refrained from requesting the pinpoint instruction because he believed said offenses were so impeaching the instruction would have had no impact on the verdict.

10

Finally, there is no dispute as to the sufficiency of the evidence from the People's case appellant kidnapped Barajas during a carjacking (count1), i.e., Barajas's movement was not consensual.  The remaining offenses discussed above were common design evidence and impeachment evidence as previously discussed.  Even if appellant's counsel had requested, and the trial court had given, the pinpoint instruction consent was a defense not vitiated by fraud, it is not reasonably probable the instruction would have had any impact on the verdict.  Any constitutionally-deficient representation was not prejudicial.  (See *Slaughter*, *supra*, 27 Cal.4th at p. 1219.)

6. *The Penal Code Section 12022.53, Subdivision (b) Enhancement as to Count 1 Must Be Stricken.*

Appellant's sentence included a 10-year Penal Code section 12022.53, subdivision (b) enhancement as to count 1.  However, as to count 1, there were no such enhancement allegation, nor was any such allegation as to count 1 admitted by appellant or found true by the jury.  Respondent concedes said enhancement must be stricken.  We accept the concession.  (Pen. Code, § 12022.53, subd. (j).)

7. *The Trial Court Failed to Exercise Its Informed Discretion When Imposing a Consecutive Determinate Term.*

During the January 28, 2013 sentencing hearing, the court stated as follows. Appellant was "that one out of a hundred if I could do things differently, I would." Appellant had wanted to take a package deal involving a prison sentence of 32 years for him, but Gonzalez did not accept the deal.  If the court could have sentenced appellant to prison for 32 years "based on the way the case went, the way [appellant] testified," the court would have done so, but it could not because it was not allowed to do so and "[i]t's just the way that the law is."  The court later stated, ". . . I'm going to give you the minimum that I can by law. . . .  I'm willing to listen but just understand there's nothing I can do, legally I can't."

As mentioned, the court sentenced appellant to prison for life with the possibility of parole plus 10 years on count 1, and for 23 years on count 4, with concurrent or stayed sentences on the remaining counts. The trial court did not expressly state whether the sentence on count 4 was concurrent or consecutive. However, the court stated, "Total aggregate term is life plus [10] plus 23 years."

Respondent concedes this case must be remanded because the trial court failed to exercise its discretion as to whether to impose the determinate term of 23 years concurrently or consecutively. It appears the trial court imposed the 23-year prison sentence on count 4 consecutive to the indeterminate sentence on count 1, even though the trial court indicated it wanted to impose the minimum possible sentence, and even though the court could have achieved that result by imposing concurrent sentences on counts 1 and 4. We accept respondent's concession. (*People v. Felix* (2000) 22 Cal.4th 651, 655; Pen. Code, § 669.) We will vacate appellant's prison sentence and remand the matter to permit the trial court to resentence appellant to prison (with precommitment credit) and to exercise its informed discretion as to whether to impose any determinate term concurrently or consecutively.[7] We express no opinion as to how the court should exercise that discretion or as to what appellant's new prison sentence, or any component thereof, should be.

8. *There Is No Need to Address Appellant's Precommitment Conduct Credit Claim.*

Appellant claims he is entitled to additional precommitment conduct credit. There is no need to address the issue. We are remanding the matter and are confident the trial court following remand will award appropriate precommitment credit.

---

[7] In light of the above, there is no need to reach appellant's claim he received ineffective assistance of counsel because his trial counsel failed to inform the court it had the discretion at issue.

### *DISPOSITION*

The judgment is affirmed, except appellant's conviction for false imprisonment (count 10) and his convictions for carjacking Barajas and Castro (counts 2 & 13, respectively) are reversed and counts 2, 10, and 13 are dismissed; appellant's Penal Code section 12022.53, subdivision (b) enhancement as to count 1, and the trial court's precommitment credit award, are stricken; appellant's prison sentence is vacated; and the matter is remanded for resentencing to permit the trial court to exercise its discretion as to whether to impose concurrently or consecutively to count 1 any determinate term, and to permit the trial court to award all precommitment credit to which appellant is entitled. The trial court is directed to forward to the Department of Corrections an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

CROSKEY, Acting P. J.

ALDRICH, J.

13