Filed 3/17/21  P. v. Erwin CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEBBRA ERWIN,<br><br>    Defendant and Appellant. | D075967<br><br><br>(Super. Ct. No. SCD275682) |


APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.

Alex D. Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Matthew C. Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Defendant Debbra Erwin appeals from a judgment of conviction entered after a jury convicted her of one count of misdemeanor prostitution and one count of misdemeanor child endangerment. Erwin and her husband were both charged with multiple counts related to an illicit prostitution enterprise in which the pair were alleged to have been engaged. The jury acquitted Erwin's husband on all of the charges alleged against him. The jury acquitted Erwin on a charge of conspiracy to run a house of prostitution, but convicted her on the prostitution and child endangerment charges.

On appeal, Erwin challenges only her conviction on the child endangerment charge. Erwin was charged with one count each of conspiracy to run a house of prostitution, prostitution, and child endangerment, based on an undercover operation that occurred "[o]n or about February 15, 2018." Erwin contends that the trial court abused its discretion in admitting evidence, presented through the testimony of a police officer, of certain details about what that officer observed in her home on February 6, 2018, nine days prior to the events underlying the charges in this case. Over Erwin's objections that the police officer's observations on February 6 were irrelevant and that the testimony would be unfairly prejudicial under Evidence Code section 352, the officer was permitted to testify that on February 6, 2018, the officer observed a white substance on a table in Erwin's home, which he believed was methamphetamine. The officer was also permitted to describe the condition of the home as "very filthy."

On appeal, Erwin contends that the trial court abused its discretion in admitting the officer's testimony that he observed suspected drugs in her home on February 6, 2018, as well as the officer's description of the condition

2

of her home as "very filthy." Erwin asserts that this evidence was not relevant to the charged offenses, and that even if it was minimally relevant, its probative value was far outweighed by its prejudicial impact. Erwin also argues that the court erred in permitting the prosecutor to argue in rebuttal that the jury could rely on the evidence of suspected drugs observed in the home on February 6 to convict Erwin on the child endangerment charge. Accordingly, Erwin contends that reversal of her conviction for misdemeanor child endangerment is warranted.

We conclude that the trial court did not abuse its discretion in admitting the challenged evidence, and that Erwin's failure to object to the prosecutor's argument at trial results in the forfeiture of her challenge on that ground. We therefore affirm Erwin's conviction for misdemeanor child endangerment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

On February 6, 2018, two San Diego police officers went to the two-bedroom home that Erwin shared with her teenaged son, T., to perform a welfare check on a juvenile. After entering the home, officers observed a loose and white "crystalline substance" on a table. Based on his experience, one of the officers believed that the substance was methamphetamine. Officers found a similar substance in Erwin's bedroom.[1] Officers noted that the kitchen was "very filthy," but that there was food in the refrigerator.

---

[1] One of the officers who observed the white substance in Erwin's home on February 6, 2018 conceded at trial that he never had the substance tested to identify its nature.

3

Erwin's son was not in the home at this time.[2] Erwin's husband was in the shower when officers arrived.[3] He got out of the shower after officers had placed Erwin under arrest. A social worker eventually arrived at the home while officers were there and determined that T. was not in immediate danger and that he should be allowed to remain living in the home.

The officers who visited Erwin's home on February 6 observed several things that led them to suspect that Erwin may have been using the home to conduct an illicit "massage operation." For example, the officers found a daily planner that listed names, times slots, and a notation: " 'one hour, panty fetish, extra money.' " Based on these observations, the officers requested assistance from a vice detective, who arrived at the home later that day. The vice detective observed a massage table in a bedroom; the massage table had a hole in the middle. The detective opined that the hole, which was about six inches across, "was for the male genitalia [to] hang down through it so there could be pleasure during the massage." Erwin possessed tax records for a business called Sophie's Healing Touch; she also possessed a massage certificate, but did not have a required massage license.

---

[2] Officers contacted T. at a Starbucks later that day and took him home after having spent "probably at least an hour" at Erwin's residence.

[3] T. testified that in February 2018, his parents were separated and he was living with only his mother at the home where these events took place. T. also testified that his father would visit the home. The prosecution alleged that Erwin's husband lived in the home, noting that he was on the lease for the home and that he was present both times officers were at the home in February 2018.

Upon returning to his office, the vice detective began investigating Erwin's contact information and learned that Erwin's telephone number was linked to an Internet site that advertised erotic massages, available until 3:00 a.m. The advertisement mentioned that "[r]espectful, mutual touching is allowed" and referred to a " 'custom' " massage table that was " 'just for men.' " Officers decided to conduct an undercover operation.

An undercover officer posing as a potential massage client contacted Erwin by "call[ing] the number on the ad." The officer subsequently exchanged text messages with someone who responded from that phone number. Through this exchange, the undercover officer arranged an appointment for 10:00 p.m. on February 15, 2018. The officer agreed to pay $160 for a "hand job." The undercover officer went to Erwin's home, confirmed the lewd arrangement, and gave Erwin $160 in marked bills. He then alerted other officers, who arrested Erwin and her husband. The officers recovered $320 from the bed, which included $160 in "premarked money" that the undercover officer had given Erwin.

1. *The defense case*

Erwin did not call any witnesses in her defense. Her husband called the couple's son, T., to testify. At the time of trial, T. was 14 years old and in ninth grade.

T. testified that in February 2018, his parents were separated. T. was living with Erwin at that time. According to T., on February 6, 2018, police officers contacted T. while he was at a Starbucks; they interviewed him for approximately 15 minutes. During this interview, the officers asked T. some questions about Erwin's massage business.

On cross-examination, the prosecutor asked T. about Erwin's massage business. When asked "[w]hat business" his mother conducted in February of 2018, T. testified that she "was a licensed massage therapist." The room Erwin utilized for her massage business was "[a]cross the hallway" from his bedroom at that time. T. testified that he "never saw any clients" when he was at home, and said that he had never heard any of Erwin's massage clients, either. T. also testified that he was never aware of the presence of any drugs in the house.

B. *Procedural background*

In June 2018, San Diego County prosecutors charged Erwin and her husband with conspiracy to run a house of prostitution (Pen. Code, §§ 182, subd. (a), 315; count 3); prostitution (Pen. Code, § 647, subd. (b); count 4); and child endangerment (Pen. Code, § 273a, subd. (b); count 5). Erwin's husband was also charged with pimping (Pen. Code, § 266h; count 1) and pandering (Pen. Code, § 266i; count 2).

With respect to the child endangerment charge, the complaint alleged:

> "On or about February 15, 2018, DARRELL NATHAN ERWIN and DEBBRA ERWIN, the person having the care and custody of John Doe, a child, who, under circumstances and conditions other than those likely to produce great bodily harm and death, did willfully and unlawfully cause and permit the person and health of that child to be endangered, in violation of PENAL CODE SECTION 273a(b)."

The case was tried to a jury. The jury acquitted Erwin's husband on all charges and acquitted Erwin on the conspiracy charge. However, the jury convicted Erwin on the misdemeanor prostitution and misdemeanor child endangerment charges. The trial court granted Erwin summary probation

6

for a term of four years on the child endangerment conviction, and three years on the prostitution conviction.

Erwin filed a timely appeal.

## III.

## DISCUSSION

A. *The trial court did not abuse its discretion in permitting a police officer to testify about what he observed at Erwin's home on February 6, 2018*

Erwin contends that the "trial court committed prejudicial error by admitting evidence that methamphetamine was found in [Erwin's] home more than one week before the incident that formed the basis of the charges in this case," because that evidence was not relevant to the conduct she was alleged to have engaged in on February 15, 2018.[4] She also asserts that "the state of cleanliness of the home that day 'has no relevancy to prove or disprove' whether she endangered her son by engaging in an act of prostitution on February 15, 2018." Erwin further contends that even if this evidence was relevant, it was unduly prejudicial and should not have been admitted under Evidence Code section 352.

1. *Additional procedural background*

At the preliminary hearing, two vice detectives testified about the origin of their investigation into the Erwins, as well as the results of their undercover operation. Both detectives discussed the fact that on February 6, 2018, a welfare check on the Erwin's teenage son had resulted in officers observing suspected drugs in Erwin's home, as well as other items that caused officers to believe that the Erwins were running an illicit prostitution

---

[4]    Erwin did not argue in the trial court, and does not argue on appeal, that admitting the officer's testimony about the suspected methamphetamine was unfairly prejudicial because the substance was never tested and confirmed to be methamphetamine or another illicit substance.

7

operation out of the home. Through motions in limine, Erwin and her husband sought to exclude evidence resulting from the February 6 welfare check. After the prosecutor noted that he intended to rely on evidence that law enforcement officers observed and gathered during the February 6 welfare check, and specified the evidence of suspected methamphetamine, a white board with a client schedule, a day planner, and photographs of the home, Erwin's attorney responded by noting that "the People are alleging the actions on February 15th" and that "Ms. Erwin is not charged with possession of drugs." Erwin's attorney argued that the suspected drug evidence from the February 6 welfare check, as well as the evidence of the genesis of the welfare check, such as who had called the authorities and what that person said about the Erwins, was both irrelevant and unfairly prejudicial under Evidence Code section 352.[5] In addition, Erwin's attorney noted, there was no evidence that T. was present in the home at the time the suspected methamphetamine was observed there on February 6, 2018.

The trial court denied the defendants' joint motion, in part. The court ruled that the People would be permitted to introduce evidence that the police were "coming there to conduct a welfare check" on February 6, and that during this welfare check, one of the officers observed a substance that he believed to be methamphetamine. The court reasoned that the presence of "contraband . . . in the house where a child otherwise lives . . . is relevant" to the child endangerment charge. The court also made an implied finding that the evidence was relevant to the prostitution-related charges, stating that the evidence "gives you an understanding as to why they're coming back [to

---

[5]    There was no discussion of potential testimony concerning the condition of the home during either the preliminary hearing testimony about the February 6 welfare check or the in limine arguments about the admissibility of evidence from the February 6 welfare check.

Erwin's house] on the 15th." The court ruled that the People would not be permitted to introduce evidence about the reason underlying the welfare check.

At trial, one of the officers who had participated in the February 6 welfare check, but who did not participate in the February 15, 2018 undercover operation, was called as a prosecution witness. When the prosecutor elicited testimony from the officer about his observation of a substance that he believed to be methamphetamine and introduced photographs of the substance in evidence, Erwin renewed her objection. The trial court overruled the renewed objection.

The trial court also permitted the prosecutor to elicit from this officer his opinion about the unsanitary condition of Erwin's kitchen on February 6, over defense counsel's objection to this testimony as irrelevant.[6] Specifically, the officer was permitted to testify that Erwin's kitchen was "filthy" and that "[t]he dishes were piled up in the sink, piled up on the counters. There was food on the dishes on the counter, just in a big disarray."

The jury was instructed as follows with respect to the timing of each of the charged crimes: "It is alleged that the crime occurred on or about February 15, 2018. The People are not required to prove that the crime took place exactly on that date but only that it happened reasonably close to that date." With respect to the offense of child endangerment, the jury was instructed, in relevant part, as follows:

---

[6] Defense counsel did not object under Evidence Code section 352 to the prosecutor's question about the officer's opinion as to the condition of the home.

9

"Defendants Darrell and Debbra Erwin are charged in Count 5 with child endangerment in violation of Penal Code section 273a(b).

"To prove that the defendants are guilty of this crime, the People must prove that:

"1. The defendant, while having care or custody of a child, willfully caused or permitted the child to be placed in a situation where the child's person or health was endangered;

"AND,

"2. The defendant was criminally negligent when he or she caused or permitted the child to be endangered."

### 2. *Relevant legal standards*

Only relevant evidence is admissible. (Evid. Code, § 350.) Relevant evidence is evidence that has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Although "[t]he trial court has broad discretion in determining the relevance of evidence [citations] . . . [it] lacks discretion to admit irrelevant evidence." (*People v. Carter* (2005) 36 Cal.4th 1114, 1166–1167.)

Under Evidence Code section 352 (section 352), "[a] trial court may exclude otherwise relevant evidence when its probative value is substantially outweighed by concerns of undue prejudice, confusion, or consumption of time." (*People v. Scott* (2011) 52 Cal.4th 452, 490.) "Evidence is substantially more prejudicial than probative [citation] if, broadly stated, it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome' [citation]." (*People v. Waidla* (2000) 22 Cal.4th 690, 724.) " ' "The prejudice that section 352 ' "is designed to avoid is not the prejudice or

10

damage to a defense that naturally flows from relevant, highly probative evidence." [Citations.]' " ' " " ' "[E]vidence [is] unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." ' [Citation.]" (*Scott, supra*, 52 Cal.4th at pp. 490–491.) As with rulings regarding the relevance of evidence, a trial court's rulings under section 352 are reviewed for an abuse of discretion. (*People v. Leon* (2015) 61 Cal.4th 569, 597.)

   3. *Analysis*

      a. *The trial court did not abuse its discretion in concluding that the challenged evidence was relevant*

Noting that the complaint alleged that the charged offenses occurred "[o]n or about February 15, 2018," Erwin contends that the charging document limited the charges, including the child endangerment charge, to conduct that occurred on February 15, 2018, and that evidence of what police officers observed in Erwin's home on February 6 was irrelevant and therefore, inadmissible.

As the People note, the fact that the charging document specifies a particular date does not require proof that the offense occurred on that date. " 'Ordinarily, the People need not plead the exact time of commission of an alleged offense. (Pen. Code, § 955.)' " (*People v. Richardson* (2008) 43 Cal.4th 959, 1026–1027; see *People v. Starkey* (1965) 234 Cal.App.2d 822, 827 ["The law is clear that, when it is charged that an offense was committed 'on or about' a named date, the exact date need not be proved unless the time 'is a

11

material ingredient in the offense' "].)  Penal Code section 955 provides:  "The precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense."  Indeed, an instruction to the jury specified that "[i]t is alleged that the crime occurred on or about February 15, 2018," but also indicated to the jury that "[t]he People are not required to prove that the crime took place exactly on that date but only that it happened reasonably close to that date."  Thus, the fact that the charging document referred to the child endangerment charge as having occurred "[o]n or about February 15, 2018," does not mean that the People were limited to presenting evidence pertaining solely to the events of that date.

Further, the charging document is not the only point of reference for purposes of informing a defendant of the charges against which she must defend.  Although "[d]ue process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial" (*People v. Jones* (1990) 51 Cal.3d 294, 317), in modern criminal prosecutions, the charging document plays a "limited" role in providing notice of the charges.  (*People v. Jeff* (1988) 204 Cal.App.3d 309, 342.)  The charging document's important but "limited" role is to inform the defendant of the kind and number of offenses with which he or she is charged.  (*Ibid.*)  The time, place, *and circumstances* of the charged offenses are left to the preliminary hearing.  (*Ibid.*)  Thus, it is the transcript of the preliminary hearing that serves as "the touchstone of due process," affording the defendant notice of the criminal acts against which he must defend.  (*Ibid.*; see, e.g., *People v. Burnett* (1999) 71 Cal.App.4th 151, 165–166 ["a defendant may not be

12

prosecuted for an offense not shown by the evidence at the preliminary hearing or arising out of the transaction upon which the commitment was based"].)

Detectives' testimony concerning their observation of suspected methamphetamine in Erwin's home on February 6, 2018, as well as other observations regarding items in the home that led officers to investigate the Erwins for running a possible prostitution operation, was presented at the preliminary hearing. For example, a vice detective was asked at the preliminary hearing, "Why did you conduct [the] in-call operation [on February 15, 2018]?" In response, the detective stated, "Originally[,] a detective had been notified about an issue with a specific female posing as a prostitute and giving massages. And there was some narcotic activity, and there was a child involved in it." The same detective later explained, "And so we operated to determine if she was still posing or involved in prostitution with the child involved." The vice detective thereby linked the officers' concerns about possible prostitution activity and the presence of suspected illegal drugs in the home with the potential risk of harm to the Erwins' son. The prosecution called a different vice detective to testify at the preliminary hearing regarding his observations at Erwin's residence on both February 6 and February 15, 2018. The vast majority of this detective's testimony pertained to things he observed that led him to believe that Erwin and her husband were running an illicit massage business. The officer was asked whether there was "anything that [he] noticed that was of consequence [in Erwin's home] based on [his] training and experience as a vice detective," to which he responded, "Yes." He went on to describe the massage room arrangement, the fact that Erwin lacked a city permit to run a massage business, a dry-erase board that appeared to depict scheduled massage

13

appointments, and a day planner that appeared to have massage appointments in it. He was then asked whether he had "notice[d] any drugs or drug paraphernalia in the house" on February 6. The court began to address a relevance objection to this question by saying, "Well, I guess it would go to -- what? The child endangerment issue or --." To which, the prosecutor remarked, "Yes, as well as Count 3."[7] The court then said, "Count 3. All right. Overruled." The detective proceeded to describe seeing a "small bag of a white crystalline substance, and there was paraphernalia, drug paraphernalia," after which he stated that he believed that the substance was methamphetamine.

At the conclusion of the preliminary hearing, the prosecutor argued that the evidence presented at the hearing created "an honest and strong suspicion to support the charges here," apparently referring to both the prostitution-related charges and the child endangerment charge. The prosecution relied on the evidence of what officers observed in Erwin's home on February 6, 2018 to explain why officers believed that the Erwins were running an illicit massage operation out of their home and why they decided to conduct the undercover operation on February 15, 2018. Further, a vice detective's testimony at the preliminary hearing that drug activity often accompanies prostitution activities and another vice detective's testimony relating the presence of suspected methamphetamine in the home on February 6 to a concern for T.'s welfare directly linked this evidence to both the prostitution-related charges and the child endangerment charge. Erwin was therefore on notice that the People intended to rely at trial on the

---

[7]    Count 3 charged conspiracy to run a house of prostitution.

14

evidence that officers observed during the welfare check at the Erwin home on February 6 to support all of the charges in the case.

Contrary to Erwin's argument on appeal, the fact that the charging document alleged that the offenses occurred on or about February 15 did not prevent the People from presenting evidence pertaining to officers' observations in the home on February 6 that led them to investigate the Erwins further. The testimony and evidence presented at the preliminary hearing provided Erwin with notice of the "time, place and circumstances" of the charged offenses that the People intended to rely on at trial, and allowed her to ascertain that, at a minimum, the People intended to present evidence concerning the genesis of their investigation into the Erwins, including evidence of what officers observed in Erwin's home on February 6, 2018. In ruling on the Erwins' motion in limine, the trial court stated that the events of February 6 were, at a minimum, foundationally relevant because the February 6 evidence "gives you an understanding as to why they're coming back [to the Erwin home] on the 15th." The vice detectives' testimony established the relevance of the suspected drug evidence to both the prostitution-related charges and to the child endangerment charge.

With respect to the relevance of the police officer's testimony at trial that, when he conducted the welfare check on February 6, Erwin's kitchen was "filthy," one of the charges against Erwin was child endangerment. Thus, evidence of any condition in the home that might have posed a potential danger to T., Erwin's minor son, was relevant and probative.

We therefore conclude that the trial court did not abuse its discretion in finding the challenged evidence to be relevant.

15

b. *Erwin has not demonstrated that the trial court abused its discretion in determining that the probative value of the drug evidence outweighed its potential prejudicial impact under section 352*

A trial court is given wide latitude as to whether to admit or exclude evidence, and the abuse of discretion standard is deferential to the trial court's determination. (See *People v. Peoples* (2016) 62 Cal.4th 718, 748.) This deference applies to the court's decision in balancing the potential prejudice to a defendant from certain evidence against the probative value of that evidence pursuant to section 352. We may invade the province of the trial court in this regard only where the court's conclusion is patently unreasonable. (See, e.g., *People v. Thomas* (2012) 53 Cal.4th 771, 806 ["A trial court's exercise of discretion under section 352 will be upheld on appeal unless the court . . . exercised its discretion in an arbitrary, capricious, or patently absurd manner"].)

Erwin has not demonstrated that the trial court abused its discretion in concluding that the probative value of the officer's observation of suspected drugs in Erwin's home on February 6 outweighed the potential prejudice posed by the admission of this evidence. While evidence of the presence of suspected methamphetamine in the home is the type of evidence that could, generally, have the potential to unfairly prejudice a defendant, it is important to bear in mind that one of the charges against Erwin was child endangerment.[8] The trial court could have reasonably concluded, based on

---

[8] Although Erwin contends on appeal that the trial court abused its discretion under section 352 in admitting in evidence a police officer's testimony about the "filthy" conditions in her home, when the prosecutor began to elicit this testimony from the officer at trial, Erwin's attorney objected only on relevance grounds, and did not register any objection on the ground that the evidence was more prejudicial than probative under section

the vice detective's testimony, that evidence of the presence of suspected illegal drugs was relevant and probative of the question whether Erwin and her husband were engaged in an illicit prostitution operation, and could also reasonably conclude that the presence of suspected methamphetamine in the home posed a danger to Erwin's son. Thus, evidence of suspected methamphetamine in the home was relevant and probative.

B. *Erwin failed to preserve her contention that the trial court erred in permitting the prosecutor to argue, in closing rebuttal, that the jury could rely on the February 6 evidence to convict her of child endangerment*

Erwin makes a separate argument for reversal of her conviction on the child endangerment charge based on the trial court's alleged error in permitting the prosecutor to argue in closing rebuttal that the jury could rely on the evidence of suspected drugs observed in Erwin's home on February 6, 2018 to convict Erwin of the child endangerment charge.[9] As the People point out, defense counsel did not register an objection to the prosecutor's argument, thereby forfeiting any contention of error on appeal. (See, e.g., *People v. Hoyt* (2020) 8 Cal.5th 892, 942–943 [failure to object at trial to prosecutor's improper arguments forfeited claims about impropriety of prosecutor's conduct]). In addition, Erwin has not raised a claim of ineffective assistance of counsel on the ground that trial counsel failed to object to the prosecutor's comments. We therefore have no basis for

---

352. This contention has therefore been forfeited. (See, e.g., *People v. Valdez* (2012) 55 Cal.4th 82 [failure to object on basis of section 352 forfeited argument on appeal].)

[9] Specifically, the prosecutor argued, "Child endangerment is a broader charge than simply what happened on February 15th of 2018, around that area, around that period of time, we know that [T.] was living in that house where methamphetamine was[.]"

17

addressing this argument as a ground for reversal of Erwin's conviction on the child endangerment charge.

## IV.

## DISPOSITION

The judgment is affirmed.


AARON, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.